UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD CLARK, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-12989-FDS |
| LUIS SPENCER, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

On November 20, 2013, plaintiff Richard Clark, currently a prisoner housed at the Massachusetts Alcohol and Substance Abuse Center ("MASAC") in Bridgewater, Massachusetts, filed a self-prepared civil rights case against (1) Cornelia Deleon, a case worker; (2) Commissioner Luis S. Spencer; and (3) Superintendent Allison Hallett.

### I. Background

The complaint is not entirely intelligible and incorporates snippets of arguments of law. From what can be discerned, however, Clark challenges his prison placement and classification. He contends that defendants have been deliberately indifferent to his serious medical needs by keeping him at the MASAC, where he is not receiving adequate medical treatment for his HIV/AIDS. He further contends that federal and state funds have been allocated for use for medical care for inmates suffering from the HIV/AIDS, but those funds have been misappropriated and are not being used for that purpose. He seeks proper placement in a prison

facility where he can be provided adequate medical treatment. He contends that the defendants' deliberate indifference to his serious medical needs has shortened his life expectancy.[1]

Clark further alleges that he has had no disciplinary infractions at the MASAC and has participated in several programs (for example, Garden, GED, Health Awareness, Relapse Prevention, Anger Management, and work). In light of this, he contends that he is entitled to a lower security placement. He alleges that he has located a jail that has accepted him and would provide programs and adequate medical treatment, but that defendant Deleon has repeatedly thwarted his placement there and told the jail to discontinue sending letters of support. Clark also contends that the classification board disallowed his lower security placement based on his criminal history (a murder conviction in the 1970's), but that the murder conviction had been reversed and vacated, and thus, the conviction should not have been used by the defendants in the classification decision.[2]

Attached to the complaint, among other things, is a classification report indicating that on July 30, 2013, the classification board voted on re-classification, and decided that Clark should remain at MASAC because he refuses to attend recommended programming such as Violence Reduction and TFAC. Moreover, the classification board deemed Clark to be a high risk for violence, recidivism, criminal thinking and cognitive behavior. Clark appealed that decision on the ground that he has been accepted to the Hampshire County Jail and that that facility meets his medical needs. His appeal also included an assertion that MASAC does not provide adequate

---

[1] He also contends that the defendants are in violation of the Americans With Disabilities Act, presumably for failing to provide programs compatible with his educational level.

[2] Attached to the complaint is a letter from Clark to Superintendent Hallett seeking another classification hearing and advising that his murder conviction was vacated and thus should not have been used as a premise for his criminal-history category and denial of reclassification. The letter indicated that Superintendent Hallett had referred this to defendant Deleon, and that she refused to take action as directed.

medical care and programs that are within his educational abilities (because he is illiterate).[3]

Clark seeks a preliminary and permanent injunction ordering his immediate transfer to a facility with a security level that can provide adequate HIV/AIDS treatment. He also seeks to have liens placed on the defendants' property and assets until the conclusion of this case. Finally, he seeks $130,000 in compensatory and punitive damages, as well as the imposition of sanctions against the governing authorities for misappropriation of funds.

In the body of the complaint, Clark seeks appointment of counsel. He also filed a separate motion for appointment of counsel alleging that he needs counsel due to the complex issues of fact and law in his claims based on deliberate indifference to his serious medical needs.

Finally, Clark has filed a motion for leave to proceed *in forma pauperis*.

## II. **Analysis**

### A. **The Motion for Leave to Proceed *In Forma Pauperis***

Upon review of Clark's financial disclosures and his prison account statement, this Court will grant his motion for leave to proceed *in forma pauperis*. Nevertheless, because Clark is a prisoner as defined by 28 U.S.C. § 1915(h), he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).[4]

This assessment is made apart from any other assessments made in other civil actions filed by Clark (if any); however, for purposes of clarification for crediting any funds received,

---

[3] Also attached was a letter to Clark from the Assistant Superintendent of Classification advising him that his request for a transfer to Hampshire House of Correction was denied because there was a lack of minimum security beds.

[4] In support of his *in forma pauperis* motion, Clark submitted an Inmate Transaction Report for the period from January 1 to October 1, 2013. That assessment was based on a manual calculation of 20% of the average monthly deposits over the period from April to October 2013 as reflected in his Inmate Transaction Report. Clark indicates that in a short time, he will have only $200 in his account and will send another printout. In light of this, the assessment made herein is without prejudice to Clark seeking reconsideration upon motion provided he submits an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b). This assessment also is made notwithstanding that Clark presently may not have sufficient funds to pay the initial partial assessment; the *in forma pauperis* statute provides for assessment at the time of filing of the action, but collection only "when funds exist." 28 U.S.C. § 1915(b)(1).

and to facilitate proper record-keeping by the Treasurer's Office at the MASAC and by the District Court Clerk's Office Accounting Department, any funds received from Clark's prison account should first be applied to any prior order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.[5]

### B. Preliminary Screening of the Complaint

Clark's complaint is subject to the statutory authority of the courts to screen and dismiss prisoner complaints.  *See* 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[6]  In conducting a preliminary review, the Court must liberally construe the complaint because Clark is proceeding *pro se.  See Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir. 2000).

While the complaint is not entirely in accordance with the pleading requirements of Fed. R. Civ. P. 8, this Court will permit this action to proceed at this time.  It will therefore direct the issuance of summonses and an order providing for service of process by the United States

---

[5] In other words, Clark's filing-fee obligation in this action shall be collected consecutively to and not simultaneously with any prior filing-fee obligation imposed by any court.  *See Ruston v. NBC Television*, USCA No. 06-4672-cv (2d Cir. 2009) *citing Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir. 2001).  *See also Lafauci v. Cunningham*, 139 F. Supp. 2d 144, 147 (D. Mass. 2001) (reviewing decisions of the courts of appeals for the Second, Seventh, and District of Columbia circuits, and indicating that "the simultaneous collection of filing fees from indigent prisoners may raise serious constitutional concerns").

[6] Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §1915(e)(2).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  *Id.*; *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

Section 1915A of Title 28 authorizes courts to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

Marshals Service, as set forth below.

### C. The Motion to Appoint Counsel

Under 28 U.S.C. § 1915, a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The First Circuit has provided the following set of factors to consider when determining whether to appoint counsel to an indigent under § 1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986) (*per curiam*); *see Bemis v. Kelley*, 857 F.2d 14, 16 (1st Cir. 1988). Ultimately, to be eligible for this assistance under 28 U.S.C. § 1915, Clark "must demonstrate that [he is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). The Court should consider the total situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. *Id.*

While Clark raises potentially serious allegations concerning his medical care, this Court cannot find that exceptional circumstances exist at this time, because the likelihood of success on the merits is questionable. This is particularly true where, as a general principle, there is no constitutional right that entitles an inmate to a particular institutional classification, nor is there a right to due process in the classification process. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Montanye v. Haynes*, 427 U.S. 236, 242 (1976). *See also Palmigiano v. Mullen*, 491 F.2d 978, 980 (1st Cir. 1974) (absent unusual circumstances, inmates do not have a constitutional right to any particular security classification). Similarly, as a general matter,

prisoners do not have a constitutional right to placement in a particular institution. *Meachum v. Fano*, 427 U.S. 215 (1976) (the Due Process Clause does not limit inter-prison transfer even when new institution is much more disagreeable). Prisoners may be moved from institution to institution without any procedural formalities, such as hearings, so long as the transfer does not amount to an "atypical, significant deprivation." *Sandin v. Conner*, 515 U.S. 472, 486 (1995) *cf. Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (the Constitution does not mandate comfortable prisons). Prison administrators are afforded broad deference in the adoption and execution of policies and practices necessary, in their judgment, to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). Whether Clark's situation presents an atypical and significant deprivation based on his medical treatment for HIV/AIDS at MASAC is a matter that cannot be decided on this record. And the Court cannot adequately gauge the propriety of appointment of *pro bono* counsel and the use of its scarce *pro bono* resources until, at a minimum, the defendants have filed responses to the complaint.[7]

---

[7] As an additional matter, Clark has not set forth factual allegations based on direct liability of Commissioner Spencer; the failure to do so subjects his claims to dismissal because the Commissioner is not liable under 42 U.S.C. § 1983 for the alleged wrongful actions of his subordinates. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)). In civil rights actions, "supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Id.* at 156 (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)). *See Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). *See also Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials). Furthermore, to the extent that Clark seeks monetary damages from Commissioner Spencer or any of the defendants in their official capacities, such claims are barred by sovereign immunity. It is well-settled that a plaintiff cannot sue an official acting within the scope of his or her office for money damages. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64-71 (1989). " . . . [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71. The Eleventh Amendment also extends to confer immunity from suit upon state officials when "the state is the real substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury . . . , or interfere with the public administration . . . ." *Pennhurst State Sch.& Hosp. v. Halderman,* 465 U.S. 89, 100, 101-102, n. 11 (1984) *accord Hafer v. Melo*, 502 U.S. 21, 25 (1991) (same).

Accordingly, Clark's motion for appointment of counsel will be denied without prejudice to its renewal after the defendants have filed responsive pleadings to the complaint, and upon good cause shown in light of the response.

### D.     The Requests for Preliminary Injunctive Relief

To the extent that Clark is seeking an order from this Court either for his immediate transfer to another facility, or for a writ of attachment on defendants' property, this Court will deny the requests.  Plaintiff has failed to meet the requirements for preliminary injunctive relief or a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure.  To obtain the extraordinary remedy of preliminary injunctive relief, he must show that (1) he will suffer irreparable harm absent the injunction; (2) the injury outweighs the harm to the defendants if granted; (3) he is likely to succeed on the merits of the case, and (4) the injunction does not adversely affect the public interest.  *Voice of the Arab World v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981); *see Weaver v. Henderson*, 984, F. 2d 11, 12 (1st. Cir. 1993); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 70 (D. Mass. 1993) (extending four part preliminary injunction test to temporary restraining orders).  Likelihood of success on the merits is the critical element of the four-factor framework.  *Weaver v. Henderson*, 984 F.2d at 12.

Here, the Court will not construe plaintiff's requests as a preliminary injunction, because preliminary injunctions may not be issued without notice to the adverse party, and no motion has been filed nor served on the defendants.  *See* Fed. R. Civ. P. 65(a)(1).

To the extent that plaintiff seeks an *ex parte* restraining order, such relief may be sought pursuant to Fed. R. Civ. P. 65(b).  The same four-factor test for preliminary injunctions also has

been extended to temporary restraining orders. *Levesque v. State of Maine*, 587 F.2d 78, 80 (1st Cir. 1976); *see Butler v. Maine Sup. Jud. Ct.*, 758 F. Supp. 37, 38 (D. Me. 1991) (applying criteria). A party seeking an *ex parte* temporary restraining order must allege that his injury or loss is "immediate and irreparable" and will occur before the adverse party or that party's attorney can be heard in opposition to the motion. Fed. R. Civ. P. 65(b). Furthermore, the party's attorney (or the party himself, if proceeding *pro se* as here) must certify to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. *Id.*

As an initial matter, plaintiff has not certified his efforts to give notice to the named defendants in this action. The failure to do so provides sufficient grounds for denial of the request. *See Thompson v. Ramirez*, 597 F. Supp. 726, 726 (D.P.R. 1984) (denying temporary restraining order, in part, where there had been no certification to court in writing, of the efforts, if any, of notification to adverse parties). Furthermore, as noted above, plaintiff has not shown sufficiently that he has a likelihood of success on the merits. On present record, the Court cannot gauge whether the harm to plaintiff outweighs the harm to the defendants, and whether the public interest would be harmed.

### III.     Conclusion

Based on the foregoing, it is hereby ordered that:

1. Plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED.
    a. Plaintiff is assessed an initial partial filing fee of $4.25, pursuant to 28 U.S.C. § 1915(b)(1)(A), and
    b. the remainder of the fee $345.75 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

2. Plaintiff's motion for appointment of counsel is DENIED.

3. Plaintiff's request (contained in the complaint) for preliminary injunctive relief in the form of an order directing his transfer to another prison facility is DENIED.

4. Plaintiff's request (contained in the complaint) for preliminary injunctive relief in the form of a writ of attachment on defendants' properties or assets is DENIED

5. The Clerk shall issue summonses as to each defendant.

6. The Clerk shall send the summons, a copy of the complaint , and this memorandum and order to plaintiff, who must thereafter serve defendants in accordance with Federal Rule of Civil Procedure 4(m).  Plaintiff may elect to have service made by the United States Marshals Service.  If directed by plaintiff to do so, the United States Marshals Service shall serve the summons, complaint, and this memorandum and order upon defendants, in the manner directed by plaintiff, with all costs of service to be advanced by the United States Marshals Service.

7. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, plaintiff shall have 120 days from the date of issuance of summonses to complete service.

**So Ordered.**

Dated: December 24, 2013

 /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge